**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-CR-0076-CVE** |
| | ) | **(13-CV-0171-CVE-FHM)** |
| | ) | |
| **MARK ANTHONY WILLIAMS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Before the Court is defendant Mark Anthony Williams' motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Dkt. # 94. In his motion, defendant requests an evidentiary hearing. Id. at 19. Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

**I.**

On June 9, 2010, a federal grand jury returned an indictment charging defendant with felon in possession of firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (count one) and possession of a firearm and ammunition after misdemeanor conviction for a crime of violence (count two). Dkt. # 11. Neal B. Kirkpatrick was appointed as counsel.[1] Dkt. # 16.

---

[1] Originally, Federal Public Defender Julia O'Connell was appointed to represent defendant. Dkt. ## 6, 7. Thereafter, O'Connell was allowed to withdraw and Kirkpatrick, from the Northern District of Oklahoma's Criminal Justice Act panel of attorneys, was appointed. Dkt. # 16.

Defendant filed a motion to suppress (Dkt. # 24), and, on July 29, 2010, a suppression hearing was held. Dkt. # 29.

At the hearing, Tulsa Police Department (TPD) officer James Bohanon testified that, on March 19, 2010, he and TPD officer Mark Wollmershauser were patrolling an area of Tulsa, Oklahoma known to be a high-crime area. Dkt. # 33, at 4. Shortly before 2:00 p.m., the officers observed a group of five or more African-American males walking across East 47th Place. Id. at 4-6. Officer Bohanon testified that the group crossed the road at an angle other than 90 degrees, which was a violation of the City of Tulsa traffic code, and then walked in the street with the flow of traffic, which was a second violation of the traffic code. Id. at 6-8, 14. The officers stopped their unmarked vehicle, and Officer Bohanon asked the group "what was up." Id. at 16. Officer Bohanon testified that defendant acted as if he were preparing to run away but obeyed when Officer Bohanon ordered him to stop. Id. at 19. Officer Bohanon asked the group to place their hands on the hood of the police vehicle, and, as defendant walked toward the vehicle, Officer Bohanon observed defendant pull at his waistband. Id. at 19-20. Once defendant was at the truck, Officer Bohanon saw defendant "take his right hand off the hood of the truck, reach down into his waistband and remove a silver and black handgun." Id. at 20. Defendant "immediately" dropped the gun on the ground and "kicked it underneath the truck." Id. at 21. Officers Bohanon and Wollmershauser recovered the gun, which was loaded with four rounds in the magazine and one in the chamber, and arrested defendant.

Lenora Davis, defendant's fiancée, also testified at the hearing. Id. at 41. She stated that she was walking with the group, which included defendant and his two teenage sons. Id. at 42. Davis stated that the group was walking on the path - - not on the street. Id. at 43-46. Once the group

reached the convenience store parking lot, Davis stated that two other men joined the group. Id. at 49. Davis testified that the group arrived at the parking lot and then the officers arrived and told the group to "[t]ouch some hood, fellas." Id. at 51-52. One of the people who joined the group in the parking lot was a man named Black, whom Davis had not met before that day. Id. at 52. Davis testified that the officers never asked her to "get on the hood" and she "just stood back and watched everything that was going down." Id. Davis testified that she saw Black attempt to hand the gun to defendant but that she did not, nor did anyone else in the group, tell officers that the gun did not belong to defendant. Id. at 53-55. The Court, in a written opinion, found that Officer Bohanon's testimony was credible, that Davis' allegation that the officers ignored her entirely was "implausible," and denied defendant's motion to suppress. Dkt. # 28.

The government made an oral motion to introduce evidence relating to statements defendant allegedly made subsequent to arrest. See Dkt. ## 48, 52. The Court held a hearing. Officer Wollmershauser stated that defendant voluntarily stated in the patrol car that the gun was not his. Id. at 4. The Court found that defendant's statement was voluntary. Id. However, defendant objected to Officer Bohannon's version of events because his version was not reflected in the supplemental offense report or otherwise disclosed to defendant prior to trial. Id. The Court sustained that objection and found that the government could introduce evidence of only those statements that were reflected in the supplemental offense report. Id. The Court issued a written opinion granting the motion in part and denying it in part based upon those findings. Dkt. # 48.

On August 16 and 17, 2010, a jury trial was held. Dkt. ## 56, 57. At trial, Officer Bohanon testified that defendant looked as if he were going to run away and was "playing with" his waistband. Dkt. # 56, at 31-32. While waiting for Officer Wollmershauser to return from chasing

one of the men, Officer Bohanon testified that he "observed [ ] [defendant] take his right hand off the hood of the car and reach into his waistband and pull out a silver and black handgun." Id. at 32. Officer Bohanon stated that defendant "dropped it on the ground and kicked it underneath the truck."[2] Id. at 33. On August 17, the jury stated that it was deadlocked. Dkt. # 54, at 2. The Court declared a mistrial, and jury trial was reset to September 20, 2010. Id.

The government filed a motion in limine asking that all evidence regarding the previous trial be excluded, which was granted. Dkt. ## 65, 70. On September 20 and 21, a second jury trial was held. Again, Officer Bohanon testified and stated that, after he ordered defendant to stop running, defendant turned toward Officer Bohanon but was still "fiddling with his waistband." Dkt. # 82, at 27. Officer Bohanon ordered everyone to put their hands on the hood of the truck, and he "observed [ ] [defendant] reach - - take his right hand off the hood of the car, reach into his waistband and remove a black and silver handgun." Id. a 28. Officer Bohanon testified that defendant "dropped it on the ground and kicked it underneath the truck." Id. In addition, and in contrast to the first trial, Officer Bohanon was also allowed to testify regarding statements that defendant made while in transport to the police station, including that Black owned the gun and had paid defendant to hold on to the gun.[3] Id. at 36-37. The jury found defendant guilty of counts one and two. Dkt. # 70, at 2; Dkt. # 72. After the jury returned its verdict, the government requested that count two of the indictment be dismissed, which the Court granted. Dkt. # 70, at 2.

---

[2] Officer Wollmershauser also testified at the first trial; however, defendant does not raise any arguments regarding Officer Wollmershauser's testimony. Officer Wollmershauser did testify, however, to statements defendant made after the arrest about his possession of the firearm. Dkt. # 56, at 62.

[3] The Court found that, unlike the first trial, defendant had sufficient notice of the statements and of the government's intent to use them.

Sentencing was held on December 21, 2010. Dkt. # 75. The Court sentenced defendant to eighty months as to count one. Dkt. # 77. Defendant thereafter appealed. Dkt. # 78. Defendant renewed his arguments that he made in his motion to suppress and asserted that the officers did not have authority to seize the group and did not conduct the seizure properly. Dkt. # 91, at 3-4. The Tenth Circuit affirmed the ruling on the motion to suppress and found that "[t]he stop progressed in three stages, and at each one the officers acted within the scope of their authority under *Terry*."[4] Id. at 4. Thereafter, defendant filed this § 2255 motion.

**II.**

The government asserts that defendant's § 2255 motion is untimely. Defendant filed his § 2255 motion on March 22, 2013. Dkt. # 94. Defendant's motion does not contain a certificate of service, but the final page of his motion states that it was submitted on March 15, 2013. Id. at 19. On the same day that he filed his § 2255 motion, defendant filed a motion to proceed in forma pauperis, entitled "Declaration in Support of Request to Proceed Without Prepayment of Filing Fees." Dkt. # 96. Attached to the declaration is a certificate of service that states that defendant served a "true and correct copy of . . . [his] [p]etition pursuant to 28 U.S.C. § 2255 w/ attachments and affidavit." Id.

A motion under § 2255 is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996, which allows prisoners one year to file their § 2255 motion. 28 U.S.C. § 2255(f); United States v. Hurst, 322 F.3d 1256, 1259 (10th Cir. 2003). The one-year period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

---

4 Terry v. Ohio, 392 U.S. 1 (1968).

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). "[I]f a prisoner does not file a petition for writ of certiorari with the United States Supreme Court after [his] direct appeal, the one-year limitation period begins to run when the time for filing a certiorari petition expires." United States v. Burch, 202 F.3d 1274, 1279 (10th Cir. 2000). The ninety-day period to file a petition for a writ of certiorari "runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance of the mandate." United States v. Richardson, 215 F.3d 1338, *1 n.1 (10th Cir. 2000) (unpublished).[5]

Defendant filed his notice of appeal on January 2, 2011. Dkt. # 78. On December 19, 2011, the Tenth Circuit entered its judgment affirming this Court's denial of defendant's motion to suppress. Dkt. # 91. Therefore, defendant's conviction became final when the ninety-day period for filing a certiorari petition expired, which was March 18, 2012, and the statute of limitations for filing a § 2255 motion expired one year later, on March 18, 2013. Defendant filed his motion on March 22, 2013.

However, "[t]he prison mailbox rule . . . 'holds that a *pro se* prisoner's [filing] will be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself receives the documents.'" United States v. Fredette, 191 Fed. Appx. 711, 713 (10th Cir. 2006) (unpublished) (quoting Price v. Philpot, 420 F.3d 1158, 1163-64 (10th Cir. 2005)

---

[5] This and all other unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

(ellipses and alterations to internal quotation in original) (remaining citations omitted). A prisoner may establish the date on which he gave the motion to prison officials by either using the prison's legal mail system, or by submitting either a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement containing both the date of submission to prison officials and a statement that first-class postage has been prepaid. United States v. Ceballos-Martinez, 387 F.3d 1140, 1143 (10th Cir. 2004). In other words, "[i]f a prison lacks a legal mail system, a prisoner *must* submit a declaration or notarized statement setting forth the notice's date of deposit with prison officials and attest that first-class postage was paid." Id. at 1145 (emphasis in original). Here, defendant's "Certificate of Service" is incorrectly attached to his motion to proceed in forma pauperis and does not state the date that it was submitted to prison officials. Dkt. # 96, at 6. Instead, it includes language that it was "EXECUTED and SIGNED on this 15th day of March, 2013." Id.

While defendant's motion is untimely if the statutes are strictly applied in this case, the Court finds that defendant's motion should not be denied on such a technicality - - attaching his required certificate of service without proper notation to the wrong motion, when both motions were filed on the same day. Further, if defendant's certificate of service is construed broadly, the date he executed and signed it, March 15, 2013, was within the statute of limitations for filing his § 2255 motion. In line with established case law "dictating that [courts] liberally construe a pro se litigant's pleadings . . . and [ ] [ ] interpret procedural rules in favor of 'deciding cases on the merits as opposed to dismissing them because of minor technical defects,'" Ceballos-Martinez, 387 F.3d at 1145 (quoting Denver & Rio Grand W. R.R. Co. v. Union Pac. R.R. Co., 119 F.3d 847, 848 (10th Cir. 1997)) (citation omitted), the Court finds that defendant's motion should be decided on its merits.

Even aside from liberally construing defendant's motions and attachments, "[e]quitable tolling is available" in limited circumstances, including "when a prisoner is actually innocent, when an adversary's conduct-or other uncontrollable circumstances-prevents him from timely filing, or when he actively pursues judicial remedies but files a defective pleading during the statutory period." Fredette, 191 Fed. Appx. at 713; see also Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000). Here, defendant, had he attached the certificate of service to his motion and stated more clearly the date it was submitted to prison officials, would have timely filed his § 2255 motion. This is closely akin to a defendant who actively pursued his judicial remedies but simply filed a defective pleading within the one-year statutory period. Such a minor technical defect is one of the limited and rare circumstances where equitable tolling will be available to a defendant, especially one where, as here, defendant "diligently pursue[d] his federal habeas claims."[6] Id. (internal quotation marks omitted). Therefore, the Court will now turn to the merits of defendant's § 2255 motion.

**III.**

In defendant's § 2255 motion, he raises five claims. Dkt. # 94. First, defendant argues that he received ineffective assistance of counsel because Kirkpatrick failed to investigate and cross-examine Officer Bohanon with impeachment evidence. Second, defendant asserts that he received ineffective assistance of counsel because Kirkpatrick failed to raise on appeal his own failure to investigate and impeach Officer Bohanon. Third, defendant alleges that the government presented false evidence, which it thereafter failed to correct, in violation of Napue v. Illinois, 360 U.S. 264 (1959). Fourth, defendant asserts that he received ineffective assistance of counsel because

---

6 As noted above, defendant's § 2255 motion and motion to proceed in forma pauperis, with the attached certificate of service, were received just four days after the statutory period to file his motion expired.

Kirkpatrick failed to "properly litigate" defendant's Fourth Amendment claim and that a "new" motion to suppress should now be granted because the Court improperly denied his pretrial motion to suppress. Fifth, defendant asserts that he received ineffective assistance of counsel at sentencing.

Except for defendant's third claim for relief, defendant's arguments all have an aspect of ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. Id. at 689. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

**A.**

Defendant's first claim for relief is that he received ineffective assistance of counsel because Kirkpatrick failed to investigate and cross-examine Officer Bohanon with impeachment evidence. Dkt. # 94, at 3. Specifically, defendant asserts that, during the first trial, Officer Bohanon testified that he heard the gun slide under the police vehicle and that "he was pretty sure that [defendant] kicked the gun." Id. at 4. Defendant argues that Officer Bohanon changed his testimony during the second trial and instead stated that he could positively identify defendant as the person in possession of the firearm. Id. Defendant states that, thereafter, Kirkpatrick, despite "inform[ing] [defendant] that he would investigate and impeach Officer Bohanon," failed to cross-examine Officer Bohanon regarding his prior testimony, which defendant alleges would have demonstrated that defendant was innocent. Id. at 5-8. Further, defendant asserts that Officer Bohanon's failure in the first trial to specifically identify defendant as the person who possessed the firearm resulted in a mistrial. Id. at 4. Defendant states that, had Kirkpatrick successfully cross-examined Officer Bohanon during the second trial, "the jury would have acquitted or decided on another mistrial for insufficient evidence." Id. at 6.

To establish the first prong of Strickland, defendant must show that his counsel's performance was deficient. Strickland, 466 U.S. at 687. However, here, transcripts of the hearing on defendant's motion to suppress, the first trial, and defendant's second trial allay any possibility of deficient performance. Despite defendant's assertion that Officer Bohanon's testimony changed among the three times Officer Bohanon testified, Officer Bohanon's testimony was strikingly similar. Each time that Officer Bohanon testified, he stated that defendant fiddled with his

waistband, dropped the gun, and kicked it under the car.[7] Therefore, Kirkpatrick's failure to investigate or cross-examine Officer Bohanon regarding any inconsistency is not a failure at all - - instead, there simply were no inconsistencies among Officer Bohanon's testimonies. Because there is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance," Id. at 688, the Court finds that defendant failed to show that Kirkpatrick's performance was deficient and cannot meet the first prong of Strickland.

Further, even if Kirkpatrick's performance were deficient, to establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Defendant asserts that, had Kirkpatrick cross-examined Officer Bohanon regarding his prior testimony and elicited testimony like the testimony Officer Bohanon gave during defendant's first trial, the second jury would have similarly been unable to find him guilty. However, contrary to defendant's argument, Officer Bohanon's testimony in the second trial did not differ from the testimony he gave in the first - - thus, there was nothing Kirkpatrick could have used from the first trial to cross-examine Officer Bohanon. Additionally, the Court found, prior to the second trial, that all references to the previous trial and its result were prejudicial and should be excluded, so Kirkpatrick could not have introduced statements regarding the first trial. See Dkt. ## 65, 70. Finally, the jury in the first trial was deadlocked. Contrary to defendant's argument, this does not mean, necessarily, that the jury concluded there was

---

[7] As noted by the government, although defendant does not contest that Officer Bohanon's testimony differed in state court from the testimony he gave in federal court, his testimony in state court was also consistent with his testimony at the suppression hearing and the first and second trials. Dkt. # 100-1.

"insufficient evidence" based upon Officer Bohanon's testimony. Therefore, the Court finds that, because defendant cannot show that he was prejudiced by any deficient performance, defendant cannot meet the second prong of Strickland.

**B.**

Defendant's second claim is that he received ineffective assistance of counsel because Kirkpatrick failed to raise on appeal his own failure to investigate and impeach Officer Bohanon. Dkt. # 94, at 8. Kirkpatrick's alleged failure could not have been deficient because any claim of ineffective assistance of counsel should be brought on collateral attack, as in this § 2255 motion, rather than on direct appeal. A direct appeal is not the proper vehicle for such a claim. Massaro v. United States, 538 U.S. 500, 508-09 (2003); United States v. Trestyn, 646 F.3d 732, 741 (10th Cir. 2011). Therefore, any failure by Kirkpatrick to question his own effectiveness on appeal is not deficient nor did it prejudice defendant. Thus, the Court finds that defendant's claim of ineffective assistance of counsel for failure to raise an ineffective assistance of counsel claim on direct appeal cannot meet either prong of Strickland and therefore fails.

**C.**

In defendant's third claim for relief, he asserts that the government presented false evidence, which it thereafter failed to correct, in violation of Napue v. Illinois, 360 U.S. 264 (1959). Dkt. # 94, at 8. In support, defendant asserts that the government's use of Officer Bohanon's testimony in the second trial, insofar as it contradicted his previous testimony, was presentation of evidence that the government knew was false and material to the case.

In Napue, the Supreme Court found that it was a violation of a defendant's due process rights for the government to present material false testimony and fail to correct the testimony once the

government knew it was false. Napue, 360 U.S. at 264; see Giglio v. United States, 405 U.S. 150, 153-54 (1972). Officer Bohanon's testimony did not differ, as defendant argues, in the second trial. Instead, Officer Bohanon's testimony in the second trial was nearly identical to all of his prior testimony. Because defendant's argument is based on an incorrect representation of Officer Bohanon's testimony at the second trial, defendant's argument under Napue must fail. Therefore, the Court finds that defendant failed to show that the government presented false evidence in violation of Napue.

**D.**

Defendant's fourth claim for relief is that he received ineffective assistance of counsel because Kirkpatrick failed to "properly litigate" defendant's Fourth Amendment claim. Dkt. # 94, at 9. Defendant asserts that, although Kirkpatrick did file a motion to suppress (Dkt. # 24), which the Court denied (Dkt. # 28), Kirkpatrick failed to make the argument that defendant suggested. Dkt. # 94, at 15-17. Specifically, defendant argues that he told Kirkpatrick that he was one of the people walking on the path and Kirkpatrick failed to present that evidence. Id. at 15. Further, defendant argues that, "due to the high speed of traffic, he was unwilling to risk the safety of his family or himself crossing the dangerous street." Dkt. # 94, at 15. Defendant states that, "for safety reasons," he would not have walked on the street, as Officer Bohanon testified that he did. Id.

There was testimony regarding speed on the road and safety during the hearing on the motion to suppress and both trials. At the hearing on the motion to suppress, when questioned by the government, Officer Bohanon stated that he and Officer Wollmershauser wanted to talk to the group to "ask them to quit walking in the street because that particular stretch of that street is very dangerous because of the curve and the incline. It's very difficult for drivers to negotiate at high

speeds, which they commonly speed in that area, and it's very dangerous for pedestrian walkers." Dkt. # 33, at 24. Further, on cross-examination of Officer Bohanon, Kirkpatrick asked whether the curve was "rather sharp," to which Officer Bohanon responded that "it's very dangerous." Dkt. # 33, at 26. Therefore, the Court finds that defendant has failed to meet the first prong of Strickland because testimony regarding the high speed of cars and safety of pedestrians was presented.

Further, Officers Bohanon testified that they stopped the group based on two traffic code violations. Id. at 15, 31-32. Therefore, even if, as defendant asserts, Kirkpatrick was deficient in his failure to elicit testimony regarding the high speed of cars on the road and how safety of the group would have been jeopardized if they were walking on the road, such failure could not have prejudiced defendant. See Strickland, 466 U.S. at 694. The officers could have stopped the group for the other violation - - crossing the street at an unsafe angle. See United States v. Williams, 451 Fed. Appx. 780, 782-83 (10th Cir. 2011) (unpublished). There is no reasonable probability that, but for Kirkpatrick's alleged error, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. Defendant thus cannot meet the second prong of Strickland.

Finally, defendant also asserts that the Court should "grant a new motion to suppress due to the Court's improper denial" of the motion filed by Kirkpatrick. Dkt. # 94, at 19. However, to the extent that this second argument is an effort to re-urge his suppression motion, that effort is procedurally barred because the suppression issues were raised, and ruled upon, on direct appeal. Williams, 451 Fed. Appx. at 780. Issues decided on direct appeal cannot be raised again in a § 2255 motion. United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994).

**E.**

Defendant's fifth claim for relief is that he received ineffective assistance of counsel at sentencing. Dkt. # 94 at 1. Although defendant asserts an ineffective assistance of counsel claim regarding sentencing, he simply alleges that "counsel rendered ineffective assistance in several areas at sentencing," and does not make any further argument as to that claim. Id.

Although a pro se litigant's pleadings are to be "construed liberally," "it is [not] the function of the district court to assume the role of advocate," and the Court will not fashion defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual bases. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim."); Killingsworth v. United States, 37 F.3d 1509, *1 (10th Cir. 1994) (unpublished).

Insofar as defendant generally alleges that he received ineffective assistance of counsel at sentencing, the Court, in an abundance of caution, has reviewed the record. Kirkpatrick appeared at sentencing with defendant, and neither Kirkpatrick nor the government objected to the presentence investigation report. Dkt. # 75. Defendant was sentenced to a term of eighty months' imprisonment and supervised release of 36 months. Id. The Court finds that defendant has failed to show that Kirkpatrick's performance was deficient or that the deficient performance was prejudicial. Strickland, 466 U.S. at 687. Thus, defendant has not met either prong of Strickland.

**IV.**

Defendant also requests an evidentiary hearing on his claims. Dkt. # 94, at 19. Defendant "is entitled to an evidentiary hearing on the issue of ineffective . . . counsel 'so long as his allegations, if true and not contravened by the existing factual record, would entitle him to habeas

relief.'" Hammon v. Ward, 466 F.3d 919, 927 (10th Cir. 2006) (quoting Anderson v. Attorney Gen. of Kansas, 425 F.3d 853, 858 (10th Cir. 2005)) (citation omitted). Because this Court has found that all of defendant's claims are without merit, defendant's request for an evidentiary hearing is denied.

**V.**

Rule 11 of the Rules Governing Section 2255 Proceedings instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a certificate of appealability should not issue as defendant has not made a substantial showing of the denial of a constitutional right. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that defendant Mark Anthony Williams' motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Dkt. # 94) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that a certificate of appealability is **denied**.

**DATED** this 25th day of June, 2013.

Claire V. Eagan

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE